IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GOCLEAR LLC,

    Plaintiff,

v.

TARGET CORPORATION,

    Defendant

No. C 08-2134 MMC

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

    Before the Court is plaintiff GoClear LLC's ("GoClear") Motion for Summary Judgment, filed December 2, 2008. Defendant Target Corporation ("Target") has filed opposition, to which GoClear has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

**BACKGROUND**

    In its complaint, GoClear alleges it owns two registered marks, specifically, CLEARX and THE CLEAR PRESCRIPTION (see Compl. ¶ 1), that it sells "skin care products to the public in connection with [such] trademarks" (see Compl. ¶ 7), and that it has "constructive priority in [such] registered marks as of late 2004" (see Compl. ¶ 1). GoClear further alleges that Target, in 2005, "adopted the confusingly similar mark CLEARRX (which may be read as 'Clear Rx' or 'Clear Prescription' among others) and used it to brand retail

---

[1] By order filed January 14, 2009, the Court took the matter under submission.

pharmacy services and newly designed medication bottles and labels offered in Target stores," and that Target's use of such mark "constitutes infringement of GoClear's prior trademark rights." (See Compl. ¶ 1.) On May 15, 2008, in response to the complaint, Target filed, inter alia, three counterclaims, in which Target alleges the registration of GoClear's marks is subject to cancellation. By the instant motion, GoClear argues it is entitled to summary judgment as to each of Target's counterclaims.

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that a court may grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(c).

The Supreme Court's 1986 "trilogy" of Celotex Corp. v. Catrett, 477 U.S. 317 (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986), requires that a party seeking summary judgment show the absence of a genuine issue of material fact. Once the moving party has done so, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." See Celotex, 477 U.S. at 324 (internal quotation and citation omitted). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "If the [opposing party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Liberty Lobby, 477 U.S. at 249-50 (citations omitted). "[I]nferences to be drawn from the underlying facts," however, "must be viewed in the light most favorable to the party opposing the motion." See Matsushita, 475 U.S. at 587 (internal quotation and citation omitted).

//

//

**DISCUSSION**

**A. First Counterclaim**

In its First Counterclaim, Target alleges that TBI, a "subsidiary" of Target, owns the mark "CLEAR X for use in connection with non-medicated skin care products, namely [an] acne treatment solution," (see Answer and Counterclaim, May 15, 2008, ¶ 8), that TBI's "predecessor in interest has since at least as early as February 28, 2004" used the mark CLEAR X in the United States in connection with "non-medicated skin care products," (see Answer and Counterclaim ¶ 9), that the CLEAR X mark has not been abandoned, (see Answer and Counterclaim ¶ 10), that such use of CLEAR X predated any use of CLEARX by GoClear, (see Answer and Counterclaim ¶ 12), and that the CLEARX mark "so resemble's TBI's CLEAR X mark as to be likely, when used in connection with [an acne treatment solution]," to cause confusion, or to cause mistake, or to deceive," (see Answer and Counterclaim ¶ 13.) Based on said allegations, Target seeks an order cancelling the registration of CLEARX, pursuant to 15 U.S.C. § 1119. See 15 U.S.C. § 1119 (providing district court may "determine the right to registration [and] order the cancellation of registrations). In particular, Target relies on 15 U.S.C. § 1052, which provides that "[n]o trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it . . . [c]onsists of or comprises a mark which so resembles a mark . . . previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive." See 15 U.S.C. § 1052(d).

By the instant motion, GoClear argues that Target cannot establish its First Counterclaim for the reason that Target cannot show TBI's predecessor lawfully used the mark. For the reasons discussed below, the Court agrees with GoClear.

**1. Applicability of "Lawful Use" Requirement**

GoClear argues that TBI's predecessor sold CLEAR X in violation of specific provisions set forth in the federal Food, Drug, and Cosmetic Act ("FDCA"), and,

consequently, Target cannot rely on said predecessor's use of the CLEAR X mark to support its counterclaims seeking cancellation of GoClear's registered marks.

In Creagri, Inc. v. USANA Health Sciences, Inc., 474 F.3d 626 (9th Cir. 2007), the Ninth Circuit held that "[i]n a contest involving competing products claiming trademark priority, . . . in order to acquire priority, a 'use in commerce' means a lawful use," which requires, inter alia, "use compliant with federal labeling requirements." See id. at 628; see also id. at 630 (observing prior "use in commerce" is required to establish trademark rights). Accordingly, "only lawful use in commerce can give rise to trademark priority." See id. at 630 (emphasis in original); see also id. at 634 (affirming summary judgment in favor of defendant as to plaintiff's trademark infringement claims; holding plaintiff could not establish its prior use of mark gave it priority, where plaintiff used mark on product sold in violation of FDCA).

Target argues the "lawful use" requirement recognized in Creagri is limited to cases in which a plaintiff alleges an infringement claim, such as in Creagri, and does not apply in an action in which a party, such as Target here, seeks cancellation of a registered mark pursuant to 15 U.S.C. § 1052(d), based on prior use of a similar mark. In support of its argument, Target observes that § 1052(d) includes the phrase "used in the United States," while 15 U.S.C. § 1051(a), the statute at issue in Creagri, provides that an "owner of a trade-mark used in commerce may apply to register his or mark." See 15 U.S.C. § 1051(a). Put another way, the "lawful use" requirement, according to Target, is imposed only where the moving party must show the mark was "used in commerce," and not where the moving party must show the mark was "used in the United States."[2] The Court is not

---

[2] One who seeks to cancel a registered mark based on prior use of a similar mark need not show the other mark was "used in commence," but, rather, that the other mark was "used in the United States," meaning that a party seeking cancellation may rely "solely on intrastate use." See National Cable Television Ass'n, Inc. v. American Cinema Editors, Inc., 937 F.2d 1572, 1578 n.4 (Fed. Cir. 1991); see, e.g., Hess's of Allentown, Inc. v. National Bellas Hess, Inc., 169 U.S.P.Q 673, 677 (T.T.A.B. 1971) (stating general principle that "prior use of . . . a mark . . . in intrastate commerce is generally sufficient to preclude the registration of the same or a similar term by a subsequent user, albeit the latter was the first to use the designation in the manner of a trademark in interstate commerce").

4

persuaded.

If Target's argument were accepted, a party who lawfully uses a mark in commerce would be precluded from registering such mark for the sole reason that a competing party had previously "used" a similar mark in an unlawful manner. Such an outcome is directly contrary to the two public policies identified in Creagri in support of imposing a "lawful use" requirement; in particular, as the Court of Appeals observed in Creagri: (1) "to hold otherwise would be to put the government in the anomalous position of extending the benefits of [the law] to [a party] based on actions [the party] took in violation of that government's own laws," see Creagri, 474 F.3d at 630 (internal citation and quotation omitted); and (2) "to give [a benefit] to [a party] who rushes to market without taking care to carefully comply with the relevant regulations would be to reward the hasty at the expense of the diligent," see id.

Accordingly, the Court finds the "lawful use" requirement is applicable to a claim for cancellation of a registered mark, where the plaintiff seeks cancellation based on another's having "previously used in the United States" a similar mark. See 15 U.S.C. § 1052(d).

**2. Pleading of Absence of Lawful Use Requirement as Defense**

Target, in a footnote, observes that the lawful use requirement has been recognized as an affirmative defense, and argues that GoClear has not alleged such affirmative defense in its answer to the Counterclaims. To the extent Target is contending such asserted procedural defect serves as a basis for denial of the instant motion, the Court disagrees.

The requirement that a party make lawful use of its mark "evolv[ed]" from the "common law doctrine of unclean hands." See Erva Pharmaceuticals, Inc. v. American Cyanamid Co., 755 F. Supp. 36, 39 n. 1 (D. P.R. 1991) (internal citation and quotation omitted); see also McCarthy on Trademarks § 31:48 (2008) (characterizing "lawful use" requirement as "new category of unclean hands defense"). Here, GoClear has alleged, as its Fifth Defense, "the doctrine of unclean hands." (See Answer, filed June 9, 2008, at 6:4-5). Even if such allegation were deemed insufficient to plead the specific defense raised

herein, such deficiency is not dispositive of the issue. A party may raise an affirmative defense for the first time in a motion for summary judgment where the opposing party is not prejudiced. See Magana v. Commonwealth of the Northern Mariana Islands, 107 F.3d 1436, 1446 (9th Cir. 1997). Here, Target has not asserted, let alone shown, it has been prejudiced by the manner in which the lawfulness of the prior use of the mark CLEAR X has been raised by GoClear. Consequently, the Court finds GoClear may assert lack of lawful use as a defense to Target's counterclaims.

**3. Application of Lawful Use Requirement**

GoClear has offered evidence, undisputed by Target, that the "CLEAR X" product sold by Biome International LLC ("Biome"),[3] specifically, a "non-chemical acne solution," is advertised as a product that will provide, according to Biome, "clear, acne-free skin" (see Ho Decl., filed December 2, 2008, Ex. 19, first unnumbered page), and that Biome advises the users of CLEAR X to "spray it on any acne-prone areas, a total of 4-6 pumps a day in the morning and in the evening," in order words, users are advised to use CLEAR X to treat an area of the body on which acne is present (see id. Ex. 20 at GOC00026; see also id. Ex. 35 (photograph of large poster displayed in store by Biome in June 2004, depicting CLEAR X product, accompanied by words, "Spray Your Acne Away")). GoClear has also offered evidence, undisputed by Target, that Biome, prior to the dates in 2004 on which GoClear asserts it is entitled to priority, delivered bottles of CLEAR X to clients in at least three states, i.e., that Biome introduced CLEAR X into interstate commerce. (See, e.g., id. Exs. 33, 34 (sold by Biome in Wisconsin); id. Ex. 33 at LAL000133, Taylor Decl., filed December 19, 2008, Ex. G at 246-47 (sent by Biome, through United States mail, to California); Ho Decl. Ex. 32 at LAL000148-49, LAL000152-53, LAL000164-66, LAL000179-80, LAL000183 (Biome principle traveled to Florida and provided CLEAR X to users therein).)

//

---

[3]In response to an interrogatory, Target disclosed that Biome is the "predecessor" of TBI, the Target subsidiary referenced in the counterclaims. (See Ho Decl. Ex. 22 at 2.)

6

Additionally, GoClear argues, and Target has not disputed, that CLEAR X is a "drug" within the meaning of the FDCA. See 21 U.S.C. § 321(g)(1)(B) (defining "drug" as "article[ ] intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease"); 21 C.F.R. § 333.303(a) (defining "acne" as "disease"). GoClear further argues, and Target has not disputed, that CLEAR X is a "new drug" within the meaning of the FDCA. See 21 U.S.C. § 321(p) (defining "new drug" as "drug . . . the composition of which is such that such drug is not generally recognized . . . as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling thereof"); 21 C.F.R. §§ 333.310-333.320 (providing list of "active ingredients" that, if included in "over-the-counter acne drug product," render it "generally recognized as safe and effective).[4]

A "new drug," such as CLEAR X, may not be "introduce[d] or deliver[ed] into interstate commerce, unless an approval of an application filed pursuant to subsection (b) or (j) of [21 U.S.C. § 355] is effective with respect to such new drug." See 21 U.S.C. § 355(a). GoClear has offered evidence, undisputed by Target, that the Food and Drug Administration has no record of such an application, let alone an approved application. (See Tercero Decl., filed December 2, 2008, Exs. A, B.) Under such circumstances,[5] GoClear has established that Biome has, at all times prior to the dates in 2004 on which GoClear asserts it is entitled to priority, sold CLEAR X in violation of the FDCA.[6]

Accordingly, GoClear is entitled to summary judgment in its favor on Target's First Counterclaim.

//

---

[4] It is undisputed that CLEAR X does not contain any of the "active ingredients" identified in 21 C.F.R. §§ 333.310-333.320. Further, Target has not contended it can otherwise establish that CLEAR X, when provided to users in 2004, was "safe and effective" within the meaning of 21 U.S.C. § 321(p).

[5] Although GoClear has not offered evidence to establish Biome's intent, such evidence is unnecessary. See Roseman v. United States, 364 F.2d 18, 26 (9th Cir. 1966) (holding "FDCA requires neither intent nor knowledge for a violation").

[6] In light of such finding, the Court does not reach the merits of GoClear's alternative arguments in support of its motion for summary judgment as to the First Counterclaim.

### B. Second Counterclaim

In its Second Counterclaim, Target seeks an order cancelling GoClear's registration for the mark THE CLEAR PRESCRIPTION, for the same reasons it seeks an order cancelling the registration of the CLEARX mark, specifically, that TBI, through a predecessor, used the mark CLEARX as of February 28, 2004, and that the CLEARX mark so resembles the registered mark, in this instance, THE CLEAR PRESCRIPTION, as to cause confusion. (See Answer and Counterclaim ¶¶ 16, 22, 26.)

For the reasons stated above with respect to the First Counterclaim, the Court finds GoClear is entitled to summary judgment in its favor on Target's Second Counterclaim.

### C. Third Counterclaim

In its Third Counterclaim, Target alleges that GoClear's registered mark "THE CLEAR PRESCRIPTION" is "descriptive of GoClear's medicated skin lotion for treatment of acne" (see Answer and Counterclaim ¶ 34) and that GoClear "cannot establish that the mark had acquired secondary meaning prior to the filing date of [GoClear's] application" (see id.). Based on such allegations, Target asserts that the registration of THE CLEAR PRESCRIPTION must be cancelled. (See Answer and Counterclaim ¶ 35.)

By the instant motion, GoClear argues that Target cannot establish that THE CLEAR PRESCRIPTION is a descriptive mark, and that such mark is suggestive.

"The cases identify four categories of terms with respect to trademark protection: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful." Surgicenters of America, Inc. v. Medical Dental Surgeries Co., 601 F.2d 1011, 1014 (9th Cir. 1979). "A trademark is descriptive if it describes the product to which it refers or its purpose," Self-Realization Fellowship Church v. Ananda Church of Self-Realization, 59 F.3d 902, 910 (9th Cir. 1995); a descriptive mark is entitled to trademark protection only if such mark has "acquir[ed] a secondary meaning, i.e., [it has] becom[e] distinctive of the applicant's goods," see Surgicenters, 601 F.2d at 1014 (internal quotation and citation omitted).[7] For

---

[7] Neither party has, in connection with the instant motion, addressed the issue of secondary meaning. Accordingly, the Court does not consider that issue.

1  example, the mark SPORTSCREME used in connection with a topical heat analgesic has
2  been found to be descriptive, because the mark "describes the use to which the product is
3  put," specifically, that is a "cream useful in connection with sports."  See Thompson Medical
4  Co. v. Pfizer Inc., 753 F.2d 208, 216 (2nd Cir. 1985).

5        By contrast, a "suggestive term," which is "entitled to protection without proof of
6  secondary meaning," is one that "suggests rather than describes an ingredient, quality, or
7  characteristic of the goods and requires imagination, thought, and perception to determine
8  the nature of the goods."  See Surgicenters, 601 F.2d at 1014-15.  For example, the mark
9  RAPID-SHAVE used in connection with shaving cream has been found to be suggestive,
10  because the mark "does not describe any characteristic or function of a shaving cream."
11  See Colgate-Palmolive Co. v. The House of Men, Inc., 143 U.S.P.Q. 159, 160 (T.T.A.B.
12  1964).

13        "Whether a term is a common descriptive name is a question of fact."  In re
14  Northland Aluminum Products, Inc., 777 F.2d 1556, 1559 (Fed. Cir. 1985); see, e.g., Yellow
15  Cab Co. v. Yellow Cab, 419 F.3d 925, 927, 929-30 (9th Cir. 2005) (reversing order granting
16  summary judgment; finding triable issues of fact existed as to whether mark was generic or
17  descriptive).  Where, as here, a mark is registered, there is a rebuttable presumption the
18  mark is valid, see 15 U.S.C. § 1057(b) (providing registration of mark "shall be prima facie
19  evidence of the validity of the registered mark"), and the "putative infringer," here, Target,
20  can create a triable issue of fact by offering evidence to support a finding the mark is
21  descriptive.  See Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 118 (1st Cir.
22  2006); see, e.g., Norm Thompson Outfitters, Inc. v. General Motors Corp., 448 F.2d 1293,
23  1295-96 (9th Cir. 1971) (reviewing record presented at bench trial on issue of whether
24  "Escape From The Ordinary" was "descriptive" or "suggestive" of plaintiff's mail order
25  catalog goods; finding sufficient evidence supported trial court's finding term was
26  "descriptive" of "unique" goods plaintiff offered for sale).

27        For purposes of determining whether a mark is "descriptive," the "inquiry is product-
28  specific."  See Borinquen Biscuit Corp., 443 F.3d at 119; see, e.g., Self-Realization

9

1  Fellowship Church, 59 F.3d at 910 (holding, where church used mark "Self-realization" in
2  connection with "books, magazines, audio and video recordings, and spiritual and Yoga
3  services," the "issue [was] whether 'Self-realization' [was] descriptive with respect to those
4  products and services").  Here, it is undisputed that the mark THE CLEAR PRESCRIPTION
5  is used in connection with "medicated skin lotion for treatment of acne."  (See Ho Decl. Ex.
6  11.)  Thus, in the context of the instant motion for summary judgment, the issue is whether
7  the record establishes that Target is foreclosed, as a matter of law, from demonstrating to a
8  trier of fact that THE CLEAR PRESCRIPTION describes either such medicated skin lotion
9  for treatment of acne or the purpose of such product.  See Self-Realization Fellowship
10 Church, 59 F.3d at 910.

11       Target argues that GoClear's product "is a prescription to clear up acne" (see
12 Target's Opp., filed December 19, 2008, at 9:12-14), and, thus, THE CLEAR
13 PRESCRIPTION, when used to describe an acne medication, describes the product.  In
14 support of this argument, Target relies on deposition testimony offered by GoClear's
15 managing member, who testified he chose to use "CLEAR" in the subject mark because "it
16 denotes clear skin" (see Taylor Decl. Ex. I at 40:6-14), because "some people, some
17 authorities, sum up the purpose behind cosmetic skincare as having clear skin" (see id.),
18 and because "[e]veryone uses the word 'clear' when they talk about acne" (see id. Ex. I at
19 43:6-7).  Target also relies on the following dictionary definition of "prescription":  "a: a
20 written direction for a therapeutic or corrective agent; specifically: one for the preparation
21 and use of a medicine[;] b : a prescribed medicine[;] c: something (as a recommendation)
22 resembling a doctor's prescription."  (See id. Ex. K (Merriam-Webster Online Dictionary));
23 In re Northland Aluminum Products, 777 F.2d at 1559 (holding "[e]vidence of the public's
24 understanding of [a] term," for purposes of establishing if mark is descriptive, "may be
25 obtained from any competent source, including . . . dictionaries").

26      In light of such showing, the Court cannot find Target is foreclosed from establishing
27 that THE CLEAR PRESCRIPTION, when used in connection with medicated skin lotion for
28 treatment of acne, describes such product and/or its purpose.

Accordingly, GoClear is not entitled to summary judgment on its Third Counterclaim.

## CONCLUSION

For the reasons stated above, GoClear's motion for summary judgment is hereby GRANTED in part and DENIED in part, as follows:

1. To the extent GoClear seeks summary judgment in its favor on Target's First and Second Counterclaims, the motion is GRANTED; and

2. To the extent GoClear seeks summary judgment in its favor on Target's Third Counterclaim, the motion is DENIED.

**IT IS SO ORDERED**.

Dated: January 22, 2009

MAXINE M. CHESNEY
United States District Judge